**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| JORGE PADILLA and MARISOL PADILLA, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:18-cv-357 |
| SUNTRUST BANKS, INC. and GREENSKY, LLC, | § § § § | |
| Defendants. | § § § | |

**PLAINTIFF'S COMPLAINT FOR DECLARATORY AND**
**INJUNCTIVE RELIEF, AND FOR MONETARY AND PUNITIVE DAMAGES**

Plaintiff Jorge Padilla ("Mr. Padilla") and Marisol Padilla ("Ms. Padilla") (collectively "Plaintiffs") files this complaint against Defendants SunTrust Banks, Inc. ("Defendant SunTrust"), and GreenSky, LLC ("Defendant GreenSky") (collectively "Defendants"), and, in support thereof, states as follows:

**INTRODUCTION**

1.      This Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p; the Texas Debt Collection Act ("TDCA"), Tex. Fin. Code. §§ 392-392.404; and the Deceptive Trade Practices Action ("DTPA"), Tex. Bus. & Com. Code §§ 17.41-17.63. Defendants failed to verify and validate a debt, reported the debt to credit reporting bureaus, and failed to delete the debt despite receipt of proof of its invalidity.

2.      The FCRA imposes duties on credit reporting agencies ("CRAs") and furnishers of information to those CRAs to report consumer information with "maximum possible accuracy." One of the purposes of imposing this duty is to ensure public confidence and the stability of the banking system. 15 U.S.C. § 1681(a)(1). In addition, finance companies and

employers rely on information provided by CRAs. Another purpose therefore at the heart of the FCRA is to preserve the good names of consumers.

3.      In applying for adequate housing, employment, and transportation, consumers are at the mercy of information contained in computer databases, under the control of CRAs. When inaccurate information is contained in those databases and consequently reported to numerous creditors and employers, the name of the consumer is systematically, institutionally, and uncontrollably ruined, as occurred here.

4.      The inaccurate information takes on a life of its own and requires exhaustive efforts on the part of consumers to correct, a long, merry-go-round ordeal involving numerous and time-consuming communications with various agencies and parties, the consumer dealing with each agency and party referring the consumer to each other same agency and party, and the consumer filing numerous reports, complaints, and documents with still more agencies, all to no avail. This merry-go-round ordeal can take years, after which time the consumer is not just financially damaged, but also emotionally, physically, and socially damaged as well.

5.      As alleged in this Complaint, Defendants furnished information to a CRA, that Plaintiffs owed a debt related to a Home Depot branded project loan Credit Account (the "Credit Account") through Defendant SunTrust. Defendant SunTrust was the original creditor of the debt who sold, assigned, and/or transferred the debt to Defendant GreenSky. Defendant GreenSky subsequently began collecting on the debt. The account information regarding Plaintiffs was false.

6.      As was their right under the FCRA, Plaintiffs disputed the debt and requested that Defendants validate the debt. Defendants illegally ignored their requests, illegally ignored verification of the debt, and, instead, illegally reported the debt to the CRAs. The debt was in fact invalid.

7.      Even after being notified by Plaintiffs on multiple occasions that they did not owe the debt, Defendants failed to follow-up, investigate, and delete the debt from Plaintiffs' credit report.

8.      The negative report therefore affected Plaintiffs' ability to obtain adequate

housing, employment, and transportation. Specifically, as a result of the invalid report, Plaintiffs

existing credit has been impacted, preventing them from being able to obtain new lines of credit

based on the improperly maxed out Credit Account and preventing them from being able to

effectuate repairs and renovations to their home without the specter of their invalid credit report

hanging over them. Plaintiffs felt helpless, frustrated, and despondent.

9.      This action seeks declaratory, compensatory, statutory, and punitive damages, and

costs and reasonable attorneys' fees for Plaintiffs against Defendants for their negligent, willful,

and knowing violations of the FCRA, FDCPA, TCPA, and the DTPA.

## PARTIES

10.     At all relevant times, Mr. Padilla and Ms. Padilla are natural persons who resides

in El Paso, Texas.

11.     At all relevant times, Defendant SunTrust ("SunTrust") is a Foreign Corporate

Fiduciary engaged in financial services throughout the state of Texas. Process may be served on

Defendant SunTrust at its Registered Agent, Geraldine Kail, 225 E. Robinson St., Ste 250

Orlando, FL 32801.

12.     At all relevant times, Defendant GreenSky ("GreenSky"), is a Foreign limited

liability company engaged in the business of debt collection throughout Texas, including in the

city of Beaumont, Texas. Defendant GreenSky generally transacts business in the city of El Paso

because it collects debts in El Paso. Process may be served on its Registered Agent, National

Registered Agents, Inc., 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136 USA.

## JURISDICTION AND VENUE

13.     As this action arises under federal and state laws, jurisdiction lies pursuant to 28

U.S.C. §1331 and 20 U.S.C. § 1367(a).

14.     Venue lies in the United States Court for the Western District of Texas pursuant

to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the

claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

15.     On or about September 6, 2016, Plaintiffs were approved for a Home Depot branded project loan Credit Account # 5492693235032774 (the "Credit Account") through Defendants SunTrust and GreenSky.

16.     After opening the Credit Account, Plaintiffs planned on using the Credit Account to facilitate a number of home repairs and renovations.

17.     Soon after opening the Credit Account, Plaintiffs discovered a number of fraudulent charges to the Credit Account they did not authorize in the amount of $1,888.48.

18.     Additionally, Plaintiffs made returns of merchandise to Home Depot in the amount of $4,320.38, which were never credited to the Credit Account, despite Home Depot accepting the returns.

19.     Plaintiffs reported the fraudulent charges to both Defendants, by telephone and in writing, on multiple occasions, however Defendants never acted on any of these reports from Plaintiffs and failed to credit the amount of the fraudulent charges or the related finance charges to the Credit Account.

20.     Specifically, around December 2016, Plaintiffs filled out and returned a written form specifying which charges had been fraudulent. Plaintiffs also made repeated inquiries and reports regarding the merchandise returns.

21.     Defendant failed to remove the inaccurate changes, post the credits, and properly adjust the balance on the Credit Account.

22.     As a result of Defendant's failure to remove the fraudulent charges, Plaintiffs Credit Account balance was reported as over the credit limit.

23.     Plaintiffs were not only prevented from making many of the purchases necessary to obtain the materials they needed for their home repairs and renovations, but despite continued payments on the inaccurate balance on the Credit Account to protect their credit, Plaintiffs' credit score was still harmed.

24.     At the time Plaintiffs were approved for the Credit Account, in or around September 2016, their credit score was 692. Since the inaccurate Credit Account reporting, Plaintiffs' credit score has dropped to 601.

25.     On around June 20, 2018, Plaintiffs disputed the Credit Account reporting as inaccurate with Equifax, Experian, and TransUnion. Plaintiff submitted documentation as proof of inaccurate balance reporting. TransUnion conducted an investigation and removed the inaccuracies. Equifax and Experian did not conduct a proper investigation and/or Defendants affirmed the inaccurate information so it still remains on Plaintiffs' credit report.

26.     In order to make the higher fraudulent payments on the credit cards so as not to affect their credit, Plaintiffs had to take out pay day loans to make payments on their other household bills. In addition, keeping up with the payday loans and making the payments so as to avoid the accumulation of high interest was very stressful for Plaintiffs.

27.     For the duration of the illegal reporting by the Defendants, Plaintiffs were effectively seized from using her credit. Plaintiffs were emotionally distraught during this time. They felt frustrated, helpless, and despondent. Despite the inaccuracy of the Debt, the proof of its inaccuracy, the Debt still trailed them whenever they went. They wanted to renovate, update and repair their home and make several purchases on credit, plans they put on hold pending the removal of the false Debt from her credit report (the "Damages"). Plaintiffs have also experienced credit denials as a result of the inaccurate Credit Account reporting.

28.     The invalid Debt, the time and effort spent to remove the invalid Debt to no avail, and the brakes it put on her plans, daily affected Mr. Padilla's demeanor, her interactions with her family, with her employer and work colleagues, and caused hardship to Mr. Padilla and her family. The long ordeal culminating in this litigation that involved numerous emails with Defendants, numerous phone calls, and numerous letters and complaints, created significant stress in her life. It took time away from important things she needed to do, such as focusing on her family, her home, and her employment. Defendants illegal actions therefore caused significant financial and emotional losses.

29.     All conditions precedent to the filing of this lawsuit have been complied with.

30.     Unless otherwise indicated, the use of Defendants' names in this Complaint includes all their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendants.

**COUNT ONE**
**VIOLATION OF THE FCRA**
**15 U.S.C. § 1681S-2**
**(AGAINST DEFENDANTS *SUNTRUST and GREENSKY*)**

31.     Plaintiffs incorporate by reference the above paragraphs of this Complaint as though fully set forth herein.

32.     15 U.S.C. § 1681s-2 of the FCRA describes the duties of furnishers to provide accurate information to CRAs.

33.     Each Plaintiff is a "consumer" under 15 U.S.C. § 1681a(b)-(c) because each Plaintiff is an individual.

34.     As contemplated by 15 U.S.C. § 1681a(b)-(c), Defendant SunTrust is a person.

35.     Defendant SunTrust violated 15 U.S.C. § 1681s-2(a)(1)(A) prohibition against reporting information with actual knowledge of errors because it knew or had reasonable cause to believe that the information was inaccurate. Specifically, the numerous notifications by Plaintiffs imparted knowledge and/or reasonable cause to believe that the information was inaccurate.

36.     Defendant GreenSky violated 15 U.S.C. § 1681s-2 (a)(1)(B) prohibition against reporting information after notice and confirmation of errors. In numerous instances, Plaintiffs contacted Defendant GreenSky to dispute information about them furnished to a CRA, and to notify Defendant GreenSky that the information was inaccurate. In numerous instances, Plaintiffs provided information that information about the Debt as reported by the CRAs on their credit report was inaccurate.

37.     Despite having proof from the consumer to the contrary, in numerous instances, Defendant SunTrust continued to furnish information to a CRA relating to Plaintiffs when (a)

Defendant SunTrust was notified by Plaintiffs at an address specified by Defendant SunTrust that specific information was inaccurate and (b) the information, was in fact, inaccurate.

38.     Defendants violated 15 U.S.C. § 1681s-2(a)(2) because they determined that the Debt was inaccurate and failed to promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to agency complete and acute, and thereafter furnished to the agency any of the information that remained incomplete and inaccurate.

39.     Defendants violated 15 U.S.C. § 1681s-2(a)(3) in knowing that the debt was disputed by Plaintiffs and in failing to provide to a CRA that the debt was disputed.

40.     Defendants violated 15 U.S.C. § 1681s-2(a)(8)(e) because after receiving notice of numerous disputes and debt validation requests by Plaintiffs, Defendants failed to conduct an investigation with respect to the disputed information, review all relevant information provided by the consumer with the notice, complete an investigation within a 30-day period, and promptly notifying the CRAs.

41.     Defendants also violated 15 U.S.C. § 1681s-2(b) in that after receiving notice of a dispute of the Debt, Defendants failed to conduct an investigation, review all relevant information, report the results to the CRAs, and promptly modify, delete, and/or permanently block the reporting of the false Debt with the CRAs.

42.     Defendants also violated in 15 U.S.C. § 1681s-2(7) in failing to inform Plaintiffs about negative information in the process of or already placed on a consumer's credit report within one month.

43.     Defendants' violations were not just negligent, but willful.

44.     Pursuant to 15 U.S.C. 1681, Plaintiff is entitled to actual or statutory damages, attorney's fees, and court costs, as well as punitive damages for willful violations.

## COUNT TWO
## VIOLATION OF THE FDCPA
## 15 U.S.C. §§ 1692-1692P
## (AGAINST DEFENDANT *SUNTRUST and GREENSKY*)

45.     Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully set forth herein.

46.     15 U.S.C. §§ 1692-1692p regulates debt collectors in their efforts to collect debts. Congressional findings and declaration pursuant to 15 U.S.C. § 1692 found that there was "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which contributed to "personal bankruptcies, to marital instability, to the loss of jobs, and to the invasions of individual privacy." Congress also found that existing laws and procedure for redressing these injuries were inadequate to protect consumers.

47.     Plaintiff is a "consumer" pursuant to 15 U.S.C. 1692a(3).

48.     The Debt is a "debt" pursuant to 15 U.S.C. § 1692a(5).

49.     Defendants are a "debt collector" pursuant to 15 U.S.C. § 1692a(6).

50.     Defendants also violated 15 U.S.C. § 1691e(2) in falsely representing the character, amount, and legal status of the Debt.

51.     Defendants also violated 15 U.S.C. § 1691e(8) in communication to the CRAs credit information it knew or should have known was false, including the failure to communicate that the Debt was disputed by Plaintiffs.

52.     Defendants violated 15 U.S.C § 1692g(a-b) by failing to validate the Debt within the prescribed time or at any time and failing to provide notification required for a disputed debt.

53.     Pursuant to 15 U.S.C. 1692k, Plaintiffs are entitled to actual and statutory damages, court costs, and attorney's fees.

**COUNT FOUR**
**VIOLATION OF THE TCPA**
**TEX. FIN. CODE §§ 392-392.404**
**(AGAINST DEFENDANT *SUNTRUST and GREENSKY*)**

54.     Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully set forth herein.

55.     Tex. Fin. Code §§ 392-392.404 regulates debt collectors collecting debt in the state of Texas.

56.     In collecting on an alleged debt that was not incurred, never noticed to Plaintiffs, in failing to verify the debt, and in reporting an unverified debt to the CRAs, Defendants violated Tex. Fin. Code § 392.303 prohibition against using unfair or unconscionable means in collecting a debt.

**COUNT FIVE**
**VIOLATION OF THE DTPA**
**(TEX. BUS. & COM. CODE §17.41-63)**
**(AGAINST DEFENDANT *SUNTRUST and GREENSKY*)**

57.     Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully set forth herein.

58.     Pursuant to Tex. Fin. Code §§ 392.404, a violation of the TCPA is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and is actionable under that subchapter.

59.     Pursuant to Subchapter E, Chapter 17, Business & Commerce Code, Plaintiffs are entitled to actual/economic damages, emotional and/or mental anguish damages, exemplary/punitive damages, and attorney's fees and costs.

60.     Additionally, Plaintiffs seek an award of discretionary additional damages in an amount not to exceed three times the amount of economic damages for Defendants' conduct committed knowingly and/or an amount not to exceed three times the amount of economic and mental anguish damages for Defendants' conduct committed intentionally. Specifically,

Plaintiffs seek $20,931 in treble damages. This is the amount of the invalid Debt pursed against Plaintiffs trebled.

61.     Plaintiffs seek reasonable and necessary attorney's fees in this case through and to the time judgment is entered and for any post-trial or post-judgment appeals, to be detailed through a statement of services submitted at the appropriate time.

### DEMAND FOR JURY TRIAL

57. Plaintiff hereby demands trial by jury on all issues so triable.

### REQUEST FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs JORGE PADILLA and MARISOL PADILLA requests that Defendants SunTrust Banks, Inc. ("Defendant SunTrust"), and GreenSky, LLC each be cited to appear and answer herein and upon final hearing hereof, Plaintiff have judgment of and against Defendants as follows:

(1) an award enjoining Defendants from reporting and collecting the Debt;

(2) a declaratory judgment be entered that the conduct of Defendants complained of herein violated the FCRA, FDCPA, TCPA, and DTPA;

(3) an award for all actual damages, exemplary damages, emotional/mental anguish damages, all attorney's fees, costs of court, and pre-and post-judgment interest at the highest lawful rates;

(4) an award of $20,931 treble damages pursuant to the DTPA;

(5) an award of statutory damages pursuant to the FDCPA;

(6) an award of punitive damages in the amount of $500,000 pursuant to the FCRA;

(7) an award of costs and reasonable attorney's fees pursuant to the FCRA, FDCPA, TCPA, and DTPA;

(8) an award of discretionary additional damages in an amount not to exceed three times the amount of economic damages if Defendant's conduct is found to have been committed knowingly; or an amount not to exceed three times the amount of economic and mental

anguish damages if Defendant's conduct is found to have been committed intentionally;
and

(9) Any such other and further relief as may be just and proper.


Dated: November 19, 2018

Respectfully submitted,

By: /s/ Ramona Ladwig
Ramona Ladwig
Bar No. 24092659
Anthony P. Chester
Bar No. 24092253
**HYDE & SWIGART**
1910 Pacific Ave, Suite 14155
Dallas, TX 75201
Phone: (214) 880-6362
Fax: (800) 635-6425
Email: ramona@westcoastlitigation.com

*Attorney for Plaintiff*